## A97A0432. GRAVES v. THE STATE.
(490 SE2d 111)

ELDRIDGE, Judge.

Pursuant to a bench trial in the City of Atlanta Traffic Court, Fulton County, Raymond Graves was found guilty of driving with a suspended license, no proof of insurance, and improper U-turn. His sole enumeration of error is that the State failed to prove beyond a reasonable doubt that venue was proper in the City of Atlanta, Fulton County, as opposed to the City of Atlanta, DeKalb County.

This issue was not raised either before or during trial. Further,

absolutely nothing in the record supports the notion that a challenge to venue was forthcoming in appellant's motion for directed verdict so as to predicate an assumption, apparently made by the dissent, that appellant did not "voluntarily" waive such issue; even appellant does not contend that the trial court's abrupt ruling on his motion for directed verdict cut short a venue challenge.[1] Moreover, appellant has not and does not herein contend that venue was *improper* in Fulton County. Instead, appellant's argument is that, while venue may very well have been proper in Fulton County, the State failed to prove it. *Held*:

Although appellant failed to preserve this issue by timely objection in the court below, this Court has, in the past, reached this issue through an analysis of the "sufficiency of the evidence" to support the verdict. While the propriety of such analysis as applied to a procedural evidentiary issue such as proof of venue may appear questionable, when a sufficiency analysis is employed, this Court examines the entire record in order to evaluate the sufficiency of the evidence to support the verdict. See *Saldona v. State*, 219 Ga. App. 762 (466 SE2d 655) (1996); *Teasley v. State*, 207 Ga. App. 719 (429 SE2d 127) (1993), overruled on other grounds, *Strickland v. State*, 223 Ga. App. 772, 775 (479 SE2d 125) (1996); *Morris v. State*, 205 Ga. App. 650 (423 SE2d 54) (1992); *Hunsucker v. State*, 160 Ga. App. 846, 847 (2) (287 SE2d 689) (1982); *Dukes v. State*, 151 Ga. App. 312, 313 (259 SE2d 706) (1979); see also OCGA § 5-6-36 (a).

The record in the case before us contains three Uniform Traffic Citations ("UTCs") which were sworn to by the arresting officer and signed by him under oath before a magistrate on the incident date, July 11, 1996. The UTC is an affidavit that may serve as the formal prosecuting instrument for a misdemeanor traffic offense before the trier of fact, and the UTC "alone would suffice to prosecute a traffic violation." *Evans v. State*, 168 Ga. App. 716, 717 (310 SE2d 3) (1983); *McCann v. State*, 158 Ga. App. 202 (279 SE2d 499) (1981). Although, for the sake of expediency, our legislature has provided that a UTC may serve the same function as an indictment or accusation, a UTC is not, as contended by the dissent, "like" either of these instruments of prosecution: an accusation or indictment is drawn by the solicitor or district attorney respectively, neither of whom is a witness to the incident in question so as to testify at trial regarding the facts

---

[1] The appellant "withdrew" his motion for directed verdict. The dissent opines that such withdrawal was motivated by the "futility" of the motion and, based thereon, excuses appellant's failure to raise any issue regarding venue. However, the futility of a motion for directed verdict does not relieve a party from preserving an issue thereby for *appellate* purposes, the identification of which issue makes the motion a far from "futile" act. To find otherwise would be to invite a whole new basis upon which to argue against the waiver of issues that were not raised or, as in the instant case, even alluded to in the court below.

thereof. See, e.g., *Brown v. State*, 82 Ga. App. 673, 676-677 (62 SE2d 732) (1950) (accusation founded upon affidavit of the prosecutor); *Smith v. State*, 138 Ga. App. 692 (227 SE2d 468) (1976) (traffic offense prosecuted upon the solicitor's accusation); cf. *State v. Doyal*, 184 Ga. App. 126 (361 SE2d 17) (1987); *Evans*, supra at 717. A UTC, on the other hand, contains the sworn affidavit of the witness arresting officer and does not become "transformed" into an accusation or indictment when used as a vehicle for prosecution; its contents remain the same.[2]

On the face of the UTCs in the case sub judice, the State's witness, arresting officer Smail, "being duly sworn upon his oath, deposes and states that he has just and reasonable grounds to believe, and does believe," that appellant committed the offense as set forth in the UTC in the City of Atlanta, Fulton County. The UTCs were then filed with the clerk of court the day after the incident, July 12, 1996. See *Ghai v. State*, 219 Ga. App. 479 (465 SE2d 498) (1995).

On September 5, 1996, the appellant opted for a bench trial in the City of Atlanta Traffic Court. The trial court heard evidence from Officer Smail, who testified that the offenses occurred in the City of Atlanta. Further, the trial court had the UTCs before it as a part of the court's record; the UTCs established that the offenses occurred in Fulton County. Appellant made no objection to venue as being in Fulton County, and no conflicting evidence was presented at trial or is present in the record before us.

In a bench trial, certain evidentiary allowances are made that differ from a jury trial. For example, it is well settled that in a bench trial, the court has broader discretion in admitting evidence than in cases where a jury is involved. *Davis v. State*, 189 Ga. App. 412 (376 SE2d 421) (1988); *Milner v. State*, 163 Ga. App. 827 (296 SE2d 360) (1982). When the judge sits as the trier of fact, it is presumed that he will consider only legally admissible evidence. *Bailey v. State*, 219 Ga. App. 258, 261 (465 SE2d 284) (1995). Further, and most importantly in the case sub judice, a trial court may take judicial notice of its own records for evidentiary purposes in a case, either civil or criminal, that is pending before it. OCGA § 24-1-4; *Petkas v. Grizzard*, 252 Ga. 104 (312 SE2d 107) (1984). From the trial court's and the parties' references to the contents of the UTCs and the judge's signature on the backs thereof, it is apparent that such judicial notice was taken. *In the Interest of G. G.*, 177 Ga. App. 639 (341 SE2d 13) (1986) (judicial notice need not be invoked or announced); see also

---

[2] As alternatively recognized by the dissent, the affidavit in a UTC makes a UTC more analogous to an arrest warrant or search warrant than it is to an accusation or indictment. Accordingly, those cases which hold that an accusation or indictment is not evidence are simply inapplicable.

*Petkas*, supra; *Walker v. McLarty*, 199 Ga. App. 460, 461 (405 SE2d 294) (1991). As such, evidence was before the trial court establishing venue in Fulton County, even if this evidence may be deemed "slight." *Minter v. State*, 258 Ga. 629 (1) (373 SE2d 359) (1988); *Aldridge v. State*, 236 Ga. 773, 774 (225 SE2d 421) (1976).

With regard to judicial notice of the UTCs, the dissent argues that "the mere fact that it [UTC] is in the court's record does not mean the trial judge may use it as evidence at a bench trial." This position is not well taken in light of the holding of the Supreme Court in *Petkas v. Grizzard*, supra. Contrary to the assertions of the dissent, in *Petkas v. Grizzard*, the trial court did not simply take judicial notice that "a *pleading* had been *filed*"; in taking judicial notice of the prior record, the content of the former pleadings, as well as the dispositions thereof, were necessarily considered by the trial court for a determination of the rights of the parties pursuant to the renewal statute, OCGA § 9-2-61. This Court reversed the trial court, espousing a position not unlike that of the dissent's herein in which this Court held: "[T]he trial court may not take judicial notice of the record in another case in the same court, without its *formal introduction in evidence. . . .* [T]he trial judge *may not* take judicial notice of the prior case." (Citations omitted; emphasis in original.) *Grizzard v. Petkas*, 167 Ga. App. 254, 256-257 (305 SE2d 861) (1983). The Supreme Court reversed this Court, finding "a trial court may take judicial notice of records in the same court." *Petkas v. Grizzard*, supra at 108. *Petkas* "recognizes that judicial notice relates to matters of fact, not law, that judicial notice is a substitute for conclusive evidence." *Mumford v. Davis*, 206 Ga. App. 148, 149 (424 SE2d 306) (1992). Even before *Petkas*, a trial court could substantively take judicial notice of the record in the immediate proceeding before it. *State v. Brinson*, 248 Ga. 380 (283 SE2d 463) (1981). Over the years, this principle has been applied repeatedly to cases, both criminal and civil, regarding the *substance* of the record before the trial court.[3] Because the UTCs were part of the record before the trial court in the case sub judice, judicial notice of the contents thereof was proper.

Further, the dissent expresses concern that, in taking judicial notice of the contents of a UTC, a "trial judge conducting a bench trial on a felony indictment need not hear any testimony; rather he may simply read the indictment to determine what crime the defendant has committed." With respect, the dissent's apprehension is sim-

---

[3] See also *Dept. of Revenue v. McCray*, 215 Ga. 678 (113 SE2d 132) (1960); *Baker v. City of Atlanta*, 211 Ga. 34, 35 (3) (83 SE2d 682) (1954); *Woodruff v. Balkcom*, 205 Ga. 445, 447 (2) (53 SE2d 680) (1949); *Roberts v. Roberts*, 201 Ga. 357 (39 SE2d 749) (1946); *Branch v. Branch*, 194 Ga. 575, 577 (22 SE2d 124) (1942); *Frank v. State*, 142 Ga. 741, 761 (83 SE 645) (1914); see also OCGA § 24-7-21; *Johnson v. State*, 204 Ga. App. 453 (419 SE2d 741) (1992).

plistic. Taking judicial notice of the contents of a UTC in a bench trial will *not* be dispositive of all issues and will *not* enable the State to prosecute an accused without introducing the testimony of a police officer. This is so because a defendant's plea of "not guilty" asserts the presumption of innocence as to the charged offenses, thereby raising contradictory assertions and conflicts as to the *elements* of those *crimes* asserted in the UTC. This gives rise to the State's evidentiary burden and the necessity for sufficient proof thereon beyond a reasonable doubt. However, a "not guilty" plea as to the *crimes* raises no such conflicts and concerns with regard to the procedural issue of venue. That is why "slight evidence" has always been sufficient as to venue *where no contradictory evidence or assertions are present.* Again contrary to the position taken by the dissent, when taking judicial notice of a fact contained in the record, about which fact there is *no* controversy or contradiction, the trial court is not required to make "any judgment about the *truth of the factual allegations* contained in that pleading." Accordingly, in the instant case, the affidavit containing the sworn testimony of the arresting officer in the UTCs, *without contradiction or conflict,* is sufficient "slight evidence" to prove the undisputed fact of venue contained therein.

In addressing additional concerns expressed by the dissent, it is argued that the UTCs were inadmissible as hearsay. A UTC is obviously not "hearsay" when the officer/affiant testifies at trial. The concerns of the rule against hearsay are satisfied where the witness whose veracity is at issue is present at trial, under oath, and subject to cross-examination. *Sanders v. State,* 182 Ga. App. 581, 585 (5) (356 SE2d 537) (1987); see also *White v. State,* 213 Ga. App. 429 (445 SE2d 309) (1994). The appellant had copies of the UTCs before him and was free to cross-examine Officer Smail on the contents thereof. See *Miller v. State,* 266 Ga. 850, 856 (7) (472 SE2d 74) (1996) (" 'Affidavits of *absent* witnesses cannot be admitted in evidence at criminal trials because doing so violates the right of defendants to confront witnesses against them.' " (Emphasis supplied)).

Further, it is argued that the UTCs were inadmissible as improperly authenticated. The dissent contends that the UTCs were not "certified under seal" pursuant to OCGA § 24-7-21 and cites *King v. State,* 194 Ga. App. 69, 71 (5) (389 SE2d 500) (1989), for this view. This view is wrong. In *King,* supra, the document at issue was a prior conviction for DUI, which had been certified by a *notary public,* not the court clerk as required by statute. The UTCs in this case came before the trial court *within the court clerk's file.* It is hard to imagine how much more "under seal by the clerk" a document can get. See also *Elliott v. State,* 253 Ga. 417, 420 (3) (320 SE2d 361) (1984); *Locklear v. State,* 131 Ga. App. 536, 537 (6) (206 SE2d 527) (1974).

Next, the dissent contends that this Court cannot consider the

UTCs as part of the "entire record" in a sufficiency of the evidence analysis because the UTCs were "never admitted into evidence." However, the trial court took *judicial notice* of the UTCs, and neither a trial court nor this Court need take judicial notice of material which *has* been admitted into evidence in a case. Consideration of a fact "without the introduction of proof" is the whole point of taking judicial notice. OCGA § 24-1-4; see, e.g., *Talley v. State*, 200 Ga. App. 442, 443 (408 SE2d 463) (1991); *Kelleher v. State*, 187 Ga. App. 811 (371 SE2d 450) (1988) (Beasley, J., concurring). Moreover, regardless of whether material has been formally admitted into evidence or not, if such was considered by the trier of fact in reaching a decision as to a defendant's guilt, the material is necessarily a part of this Court's sufficiency of the evidence analysis. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Finally, the dissent contends that, even if the UTCs *were* subject to judicial notice, they could not establish venue because the UTCs "do not clearly show in which county the offenses occurred." The dissent points out that Officer Smail completely and totally encircled the word "Fulton" on each citation as the county in which the incident occurred; however, the officer's freehand circle caught part of the "D" and a little of the "E" in the word "DeKalb," which appeared as an option next to "Fulton." The dissent refers to this as "vague and unexplained markings," and claims a deprivation of due process in the inability to cross-examine Officer Smail on the true meaning thereof. We make two observations: (1) It is quite possible the dissent might be overestimating a trier of fact's tolerance for cross-examinations of such painfully little merit, which cross-examinations may hurt more than help one's cause, whether permitted by due process or not; and (2) the appellant *could* have cross-examined the officer on the contents of the UTCs, since the officer took the stand, and the record shows the appellant had the UTCs available. Due process "guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense [or the dissent] might wish." (Citations and punctuation omitted; emphasis supplied.) *Price v. State*, 223 Ga. App. 185, 189 (8) (477 SE2d 353) (1996). In the case sub judice, no cross-examination was attempted regarding venue, because venue was a given in the court below.[4]

"[I]n reviewing on the general grounds, . . . evidence in the record is reviewed on appeal in the light most favorable to the state." (Citations and punctuation omitted.) *Gibbs v. State*, 157 Ga. App.

---

[4] It should be noted that appellant himself does not raise any issues regarding cross-examination, inadmissible evidence, hearsay, "vague and unexplained markings," or deprivation of due process; the dissent raises these issues on appellant's behalf.

530, 531 (278 SE2d 111) (1981). From a review of the entire record before us, we find the evidence of venue in the case sub judice, although slight, is sufficient. *Davis v. State*, 203 Ga. App. 106 (416 SE2d 375) (1992).

*Judgment affirmed. Andrews, C. J., Pope, P. J., and Johnson, J., concur. Birdsong, P. J., Blackburn and Ruffin, JJ., dissent.*

RUFFIN, Judge, dissenting.

Because no admissible evidence in the record shows these offenses occurred in Fulton County, I would reverse Graves' conviction and remand this matter for a new trial.

1. First, contrary to the majority's opinion, the record does not show that Graves waived the right to challenge his conviction on grounds that the State failed to prove venue. The transcript reflects that Graves' counsel attempted to move for a "directed verdict"[5] at the close of the State's case, and the trial court overruled the motion before Graves' attorney stated his grounds for the motion. When Graves' attorney then asked whether he would have an opportunity to argue his motion, the court replied, "I'm not sure why you want to, but you certainly may if you wish to." Apparently realizing the futility of the effort, Graves' counsel declined the opportunity. Under these circumstances, I would not find a voluntary waiver. The trial court's comment showed it had no intention of considering the attorney's arguments.

Moreover, Graves' enumeration regarding the State's failure to prove venue beyond a reasonable doubt attacks the sufficiency of the evidence. In criminal cases such as this, "[t]he proof of venue is an essential element in proving guilt in a criminal case. [Cit.] Like every other material allegation in the [accusation], it must be proved beyond a reasonable doubt. [Cit.] Where venue is not established by the State, any ensuing judgment is void, although reversal of a conviction on this basis does not prevent retrial in a court where venue is proper and proven. [Cit.]" (Punctuation omitted.) *Thayer v. State*, 189 Ga. App. 321, 322 (1) (376 SE2d 199) (1988). A void judgment may be held to be such in any court. OCGA § 17-9-4. Therefore, Graves was not required to move for a directed verdict or take other measures to preserve this argument. See *Lee*, supra. Even where a challenge to venue has not been raised in the trial court, the Georgia authority relied upon by the majority still requires that venue be proved, even if by slight evidence. See *Minter v. State*, 258 Ga. 629 (1)

---

[5] Of course, as we have previously noted, "[t]here is no verdict in a bench trial. [Cit.] The issue, then, is simply whether the evidence met the test of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)." *Lee v. State*, 201 Ga. App. 827, 828 (1) (412 SE2d 563) (1991).

(373 SE2d 359) (1988) ("when the evidence is not conflicting *and when no challenge to venue is raised at trial,* slight evidence is sufficient to prove venue. [Cit.]" (Emphasis supplied.)).[6]

2. Here, *no admissible evidence* showed venue in Fulton County. The only venue testimony presented at trial showed the incident occurred at "Northside and Magnolia" in the City of Atlanta. We have previously rejected any notion that a court may take judicial notice that a specific street location in the City of Atlanta is in Fulton County. See *Smith v. State,* 138 Ga. App. 692 (1) (227 SE2d 468) (1976). The majority now finds evidence of venue in the "uniform traffic citations" (UTCs) contained in the file. These hearsay documents, which were never admitted in evidence at trial, are not sufficient to prove venue even under the "slight evidence" standard employed by the majority.

First, the UTCs in this case were employed by the State as substitutes for formal written accusations. This procedure is proper under OCGA § 40-13-1, which states that the UTC may serve as the "citation, summons, or other instrument of prosecution of the offense or offenses for which the accused is charged." But like an accusation or indictment, the UTC *is not evidence;* it is merely a document outlining the charges against the defendant. See *Crowe v. State,* 265 Ga. 582, 591 (16) (458 SE2d 799) (1995) (indictment is not evidence); *Perkins v. State,* 151 Ga. App. 199, 206 (8) (259 SE2d 193) (1979) (accusation is not evidence).

Because the UTC is not evidence, the majority's argument that the trial court could "take judicial notice of its own records for evidentiary purposes" is misplaced and meaningless.[7] In *Petkas v. Grizzard,* 252 Ga. 104 (312 SE2d 107) (1984), cited by the majority, the trial court took judicial notice that a *pleading* had been *filed.* There is nothing in *Petkas* indicating the court made any judgment about the *truth of the factual allegations* contained in that pleading. Applying the majority's rationale, a trial judge conducting a bench trial on a felony indictment need not hear any testimony; rather, he may simply read the indictment to determine what crime the defendant has committed. Similarly, the affidavit attached to a search warrant, like this UTC, is a sworn statement often found in the trial court's record but usually not admissible as evidence at trial. See, e.g., *Reed v. State,* 150 Ga. App. 312, 314 (2) (257 SE2d 380) (1979). The mere fact

---

[6] As I urged in *Brinkworth v. State,* 222 Ga. App. 288, 290-291 (474 SE2d 9) (1996) (Ruffin, J., dissenting), I question the appropriateness of a rule allowing "slight evidence" to prove venue. Such a rule abrogates the State's burden of proving every element of the offense *beyond a reasonable doubt.* Even applying this rule, however, the State's proof in this case was clearly insufficient to prove venue.

[7] Of course, *nothing* in the record indicates the trial court did, in fact, take judicial notice of the UTC.

that it is in the court's record does not mean the trial judge may use it as evidence at a bench trial. This holding violates Graves' due process rights by dispensing with the requirement that the State present *evidence* proving every material allegation of the offense beyond a reasonable doubt. See *Postell v. State*, 200 Ga. App. 208, 210 (2) (407 SE2d 412) (1991), rev'd on other grounds, 261 Ga. 842 (412 SE2d 831) (1992).

To justify its evidentiary reliance on the UTCs, the majority cites the oft-repeated principle that this Court searches the "entire record" when it reviews the sufficiency of the evidence. This principle, however, has no application to the present case. Almost every record in every criminal case before this Court contains material which, for one reason or another, was never admitted into evidence. Although the information in these UTCs was "sworn to" by the officer, they constituted "ex parte affidavits" which were not tendered as business records or admitted under any other exception to the hearsay rule. See *Miller v. State*, 266 Ga. 850, 856 (7) (472 SE2d 74) (1996). The majority opinion refers to the admissibility of "exemplified" public records, OCGA § 24-7-21; even if this statute applied, at the time the trial court heard this matter these UTCs were not "certified under seal" as the statute requires. See *King v. State*, 194 Ga. App. 69, 71 (5) (389 SE2d 500) (1989). Therefore, the UTCs were not admissible evidence. This Court certainly does not review *inadmissible* evidence when determining the sufficiency of the evidence. See *Shaver v. State*, 199 Ga. App. 428, 430 (1) (405 SE2d 281) (1991). Information contained in these hearsay documents cannot be used to sustain Graves' convictions.

Finally, even if this Court could use information contained in the UTCs to find the State had proven venue, the UTCs do not clearly show in which county the offenses occurred. In the section of each UTC marked "location" is the statement: "In the City of Atlanta, County of Fulton/Dekalb," followed by a blank for the street or address. On each citation, the arresting officer circled "Fulton," but in each case the circle also encompasses part of "Dekalb." Despite the fact that we have no testimony from the officer explaining his marks or specifying which county he intended to circle, the majority opinion concludes the officer intended to circle only "Fulton." To rely on these vague and unexplained markings, which Graves had no ability to cross-examine, deprives Graves of due process. See *Miller*, supra.

For these reasons, I respectfully dissent.

I am authorized to state that Presiding Judge Birdsong and Judge Blackburn join in this dissent.

DECIDED JULY 10, 1997 —
RECONSIDERATION DENIED JULY 28, 1997 — 

Patterson & Patterson, Jackie G. Patterson, Yasma M. Patterson, for appellant.

June D. Green, Solicitor, Steven E. Rosenberg, Assistant Solicitor, for appellee.